Good morning. May it please the Court, Michael Tanaka appearing on behalf of Mr. Martinez-Cortez. Mr. Martinez-Cortez in this case got three criminal history points for a prior sentence of imprisonment. Now the only issue is whether those points were properly awarded. And the answer is no. And the reason for that is partially to do with the unique nature of illegal reentry. Illegal reentry is not a status offense according to the law, but it's certainly a close relative in that it continues for an extraordinarily long period of time. It begins when the man enters the country, and it doesn't end until he's discovered by immigration authorities. So that covers generally, temporarily, a long period of time. And he's responsible then for anything that occurs during that time in terms of all kinds of things related to the law. So that's whatever crime the state or federal commits for that time. It could be a long time. It could be 7 years. It could be 10 years. It could be 12 years. And whatever crimes he commits during all that time, he might serve a crime. He might be convicted of a crime, serve a sentence, come out of state prison, let's say. All those things would be related. That's correct, Your Honor. And that comes from a straightforward reading of the guidelines. It does seem a little odd. Those geniuses in Washington? Right. Now, with those, in Judge Kaczynski's hypothetical, the various crimes or offenses that are committed during the point when he's continuing in the country. For the crime of illegal reentry, would those enhance his offense level in determining the sentencing guidelines? In other words, could you capture those prior events, crimes, convictions? Is there an enhancement to the offense level for those? There is no specific offense characteristic within the illegal reentry guideline itself that captures anything like that. So it wouldn't be double counted then? No, not for illegal reentry. Of course, for many other offenses, you could. And that's generally why, from the defense standpoint of view, we want to contract the definition of relevant conduct. But we stand here as we stand here. And the issue here is what relevant conduct means in the context of the sentencing guideline for criminal history points in terms of a prior sense of imprisonment. And like I said, the guidelines are very straightforward on this point. You get three points for each prior sense of imprisonment. Why wouldn't there be an enhancement if you can count relevant conduct and everything that happens, all these offenses he commits while he's in this status or that status, while he's committing this crime of being here illegally? Why wouldn't that conduct be taken into account by the sentencing judge in determining what kind of a sentence to give him because of his conduct? You mean in terms of determining the guideline range or in terms of the reasonable sentence? Start with the guidelines range. It would be. It would be countable, except there's nothing in 2L1.2, I believe, is the guideline that where any of this could be captured. That guideline doesn't provide for any enhancements based on other offense, commissions of other offenses, unlike some other guidelines, which do. But the illegal reentry guideline does not. It doesn't say you take into account all of his bad acts or conduct or criminal history. It doesn't become criminal history. It's not criminal history aside from that. No. It provides enhancements if the reentry follows subsequent to a deportation for various crimes. But the commission of the crimes themselves do not increase the offense level. By the manner in which the crime was committed? No. It doesn't in a particularly heinous way? Not in the guideline. The guideline doesn't account for any of that. And generally it wouldn't because the guideline is an immigration guideline, and normal immigration offenses aren't committed in heinous ways and don't involve other criminal conduct. So unless it was captured as prior criminal history, then it's just blank for purposes of the sentencing guidelines. Obviously, the judge could consider it in its discretionary capacity. Well, it's blank in terms of this particular sentencing criminal history guideline, 4A1.1a. Of course, it could be captured in other guidelines as in 4A1.1e and 4A1.1b, which allow in certain cases an increase in criminal history points if the person had committed the reentry offense or the illegal reentry offense and the whole complex of it within two years of being released from prison, or if he committed the offense while on parole from another sentence. So any of those periods that coincided with this entire time period of the illegal reentry offense could be captured. It just doesn't capture it as a prior sentence of imprisonment. Now, that's not to say that he's not getting penalized for it because necessarily he served, and in this case he did serve two years in the state court for that offense. So he's not getting any windfall because he doesn't get three additional criminal history points for it. And, in fact, had the government not deferred prosecution of the federal offense until after he had completed the sentence in the state case, it wouldn't be available as a prior sentence of imprisonment at all. It's only because of the timing of the prosecutions in this case. So we're not giving this man a free pass by any means. I understand you. Let me go to your plain language discussion for a moment. Isn't it in part relying on the application notes? And I believe we asked you to look at the case which suggested that where the application notes were inconsistent with the guideline itself, in those cases we would disregard the application notes. Yes. In this case, there is absolutely no inconsistency between the guideline and the application note. The application note just directs the reader to the other guideline section where a prior sentence of imprisonment is defined. And that means a conduct not part of the incident offense. Now, that certainly... And then that goes to the application notes, which then in turn directs you to 1B1.3 for relevant conduct. So it's really you're going from 4A1.1, the definition of prior sentence, to 4A1.2, the definition of prior sentence. And then you have to go to the application notes, which directs you to 1B1.3 for relevant conduct. We're in guidelines land, so when they say conduct that's part of the incident offense, it has a very specific and prescribed meaning in the guidelines as a whole, throughout the whole guidelines. And that's because the offense is defined so broadly under the guidelines. So it's not inconsistent. Is that part of the incident offense defined in the guidelines anywhere? A part of? Well, offense is defined in the guidelines. And offense is defined in the guidelines under the very definitions, 1B1.1, in the comments to note 1 and 8, and that's subsection H. Offense means the offense of conviction in an all-relevant conduct. So obviously anything that's not part of the offense of commission, all-relevant conduct, then is not part of the offense. But the offense includes relevant conduct by definition. So it's not really adding anything or inconsistent when you say that not part of the incident offense, includes anything that's not part of the incident offense and not part of the relevant conduct. That's just a basic guideline definition, and there's no inconsistency at all. Given that, then the plain language of that guideline requires that this prior sense of imprisonment, the conduct that led to the prior sense of imprisonment, is part of the incident offense. As nonsensical as that might seem in the real world, but in the world of guidelines and illegal reentry, this intersection is what creates a seeming practical anomaly, but not a legal anomaly. And it's an anomaly that exists in all, anytime these two things intersect. That's why for statute of limitations, venue, what guidelines to use, it's all very different in illegal reentry cases because you can choose any date, from the date of entry into the country until the time it's discovered by the immigration authorities as the relevant date in terms of any of those things for venue, for statute of limitations, for choice of guidelines, and for other criminal history issues. So it would make no sense at all to contract that just in this particular instance because it might end up leading to a lesser sentence for this man. The rule isn't that we define these things depending on how much time it ends up giving the defendant. We have to define them consistently, and under the guidelines and the law of the circuit, it's very clear that this doesn't count as a prior sentence of imprisonment. Thank you, Ken. May it please the Court. Eric Silber on behalf of the United States. I think what this case really addresses is the interaction between 4A1.1, 4A1.2, and 1B1.3. And to some extent, as the Court has noted, this is a bad example for this because what happens when the defendant is in the United States isn't reflected at all in the offense level. It is criminal history or it's nothing as far as the guidelines are concerned. But I can use a different example which shows the interplay a little better, which would be an ongoing fraud offense in which during this ongoing fraud offense the defendant is convicted of a gun-related offense. It has no bearing on the fraud offense at all. It just happens to take place while this ongoing fraud offense occurs. Now, there is a guideline enhancement for use of a firearm in fraud cases, 2B1.1, B12. And, in fact, it's a fairly serious firearm offense because it gives a plus 2 enhancement or, if the offense level is too low, has a minimum offense level of 14. Now, I think that puts a good example of how these principles should interact because there it's either offense level or it's criminal history given the way that... Is that what happened in Johnson? Well, I would respectfully disagree in Johnson in that... I asked a question. Isn't that what happened in Johnson? That it would be... That was a case where the guy is involved in an offense and then he also happens to have a gun up in his apartment away from the scene. He doesn't use the gun. I think it was considered as being a kidnapping. Just Tashima thought it wasn't a kidnapping, and he was probably right. But that's what the majority held, and not terribly well-written opinion. But then he also happens to have a gun. I mean, this is the very example you are talking about, right? And what they said as well is during, during means the same time, even while he is downstairs in the parking lot, he is the possessor of everything in his apartment. And so even while he is busy kidnapping the young woman downstairs, he is also busy possessing the gun upstairs, and so he is now possessing a gun during a kidnapping. Slam, you get hit with an enhancement for having a gun during the... Isn't that exactly your horrible hypothetical? No, I would actually disagree respectfully, because I think there at least is a relationship between the gun. It wasn't used in furtherance of the physical restraint, but there was at least a relationship between... What was the relationship? Well, first if you start with defendant's reason why he isn't permitted for possessing a gun, it was because he had a misdemeanor crime of domestic violence, which is, so he is not allowed to possess a gun because of his domestic violence conduct. The physical restraint in that case was a domestic reliance. But it didn't matter why he wasn't allowed to have a gun. He would have not been allowed to have a gun because he had a prior felony. That was not an issue. The point is he was not allowed to have a gun. That's true, but it did bear some relationship, albeit... Again, I don't think that... Would it have been a different result if he had not been allowed to possess a gun because he had previously been convicted of a narcotic offense? Well, it seems to me there's one... related in that case. The answer is no, that it would have made a difference. I don't think that alone would be decisive, no. I think it's the interaction... It doesn't matter that the reason he had the gun was prohibited from having the gun was a domestic violence offense. I think it plays in with the three factors in that case. I agree that it wouldn't itself be a decisive factor in... It's a toy gun, right? What are the other two horses? Well, here at least he fired it, so... Here at least he fired the gun, and actually that's the third factor I would get to. This is a course of conduct. One is that he was prevented from possessing the gun specifically because of his domestic violence conduct, and the physical restraint was domestic violence conduct, which is the reason you don't want him to have a gun. At the time the physical restraint takes place, it's outside the apartment where the gun is. You can't have a constructive possession of a firearm if you have no ability to access the gun at all. For example, if the restraint happened in Washington, D.C., but the gun had been in Los Angeles, in that circumstance... I think that he was committing an offense the entire time that gun was in his apartment, wherever he was. Well, except in Casualine this court has indicated that if you have no ability to access the gun, even if you're the owner, you don't constructively possess it. You mean to tell me that he was committing the offense of being a felon in possession of a gun every other day, or he stopped doing it when he got two miles away from the apartment? I don't think it's a strict proximity test, but I do agree that if he, for example, had been in a different city while it was taking place, you wouldn't say... Get the other second offense. Okay. That's the question. When is he guilty of being a felon in possession of a gun? If he keeps it in his apartment. I think if you can conclude that he has no access to it, he wouldn't be in constructive possession. So he's only guilty part of each day? When he goes off to work, he's no longer guilty? He's not committing the crime? He's only committing it when he's in the apartment? I think that that would generally be true. If you had no access to it, you would not be possessing it at that particular point in time. It doesn't mean you wouldn't be possessing it at some other point in time, but I think if you have no ability to access the gun whatsoever, you wouldn't be constructively possessing it because... So the guys that work in Pasadena, let's say he lives in Santa Monica, right? Mm-hmm. You've been to Los Angeles? Yes. So you know what these distances mean, right? So let's say he lives in Santa Monica, he works in Pasadena, and he has a gun in his apartment in Santa Monica, comes to work, he has a key chain with his car key and his phone key on there, he gets arrested in Pasadena. He's not guilty of being a felon in possession, even though the key that he has on him will get into a car, which will drive him to Santa Monica within an hour, which also has a key that will open that door, and the other man can have access to the gun. That would not be a felon to arrest. I mean, I think that that would be more difficult. I mean, you do have some proximity. He's not right there. I mean, I think in that circumstance what you would... But you are standing there for the government. Are you saying you wouldn't charge? Well, I think we would charge him based on the fact that he's in his apartment at other times. I don't think he has to, as a general matter, have it at that particular moment. I mean, that may be when he's arrested, but the fact that he's in his apartment at other times, it's found in his apartment, would be enough for us to establish constructive possession. Usually a particular moment in time doesn't matter. Do you think you would have proof  I mean, let's say you had no proof of that at all. The only thing you know is you're arresting here. You find the keys. You find him. For whatever other reason, you arrest him. It doesn't pan out. But what you do find is a key to his apartment, and you know nothing else about it. He has no friends or relatives. And all you know is he's got a key, and he can get in the apartment and get the gun. And you wouldn't charge him. Well, it would be circumstantial evidence that he had been in the apartment, obviously. I mean, if he doesn't know about the gun, if we're not able to establish either he's the owner of the gun or he knows about it. Yeah, Henry's a gunner. I think it's Henry. I mean, in that circumstance, I think we would have a pretty good inferential case that he's been in the apartment. First, because it's his gun, and secondly, because he has the key to it. I don't think it would be a big problem for us. Usually timing for felon possession doesn't matter. So you would not take the position that he is guilty of the law in Pasadena. That's what you're saying. I don't believe that that would ordinarily be how we would prove that. We would prove it because of his relationship to the apartment. I've never thought of that, but that sounds sort of like a good idea. Maybe we'll try it next time. Well, I mean, I think here... AUSAs have that look before. Well, here, I think divorcing this, I mean, to take a step back, I mean, again, in the course of this conduct, the third factor was he actually, after the restraint, went and got the gun and started firing it. So you have a course of conduct here. He's not printed to having the gun specifically because of these types of acts. You're talking about our guy or Johnson? Johnson, sorry. He's not allowed to have a gun specifically because of these type of acts. He then engages in the physical restraint while the gun's in the apartment upstairs, and as far as the law is concerned, constructive possession is the same as if he had it on him. If you want to pick facts out of the case, you can also pick the fact that they mentioned that he restrained her in the apartment earlier. That's true. There was the restraint earlier. But they don't go off on that. For reasons unknown, they mention that as a fact, but when it comes to the analysis, the only thing they talk about is this thing in the parking lot, which just as Sheila rightly points out, wasn't even a kidnapping. All he did was take away her keys. Well, I think... She could have walked out, could have walked away. I think the problem in looking at... I don't think they're hurting him. No, no. Just as she was in the cell. Just focus on the majority. Just as she was in the cell. I think that the problem you have in looking at Johnson is the court focused simply on whether the defendant was committing the crime of constructive possession of the firearm while the restraint was happening. It didn't look at the question of whether there had to be some relationship between the two. And having not addressed that issue... You view that as a problem. We view it as a holding. Well, I accept that. I think the issues that merely lurk in the record and aren't actually decided aren't a holding. The only question it was looking at at that point in time was, well, was he actually committing the offense of constructive possession while the restraint was taking place? Because he didn't have the gun on him when the restraint was taking place. And the court said, yes, because he was the owner of the apartment and he had dominion over the gun that was in the apartment. But it focused on whether the commission of the offense was taking place at the time. It didn't consider whether there had to be some relationship between the two. And I think, particularly given the breadth of... Isn't that a holding? They look at temporal relationship. They don't look at causal relationship. And they come to a conclusion. Why isn't the only way we can read that is saying temporal relationship matters, causal relationship doesn't matter? Well, I think it would matter there if they had taken a look at causal relationship and rejected a causal relationship instead of simply looking at temporal only. How would they do that? They might have looked at the fact it was Tuesday and so rejected the relevance of that too. Well, but I mean, it doesn't... Why isn't it enough? Is that they look at one fact, find that fact sufficient. And once they find that fact sufficient, it becomes sufficient as a matter of the law unless there are cases of the rule. They don't have to say, and these other facts don't matter. Well, I mean, to take a... Admittedly not a perfect analogy. To take a case where the court exercises jurisdiction and the question is whether there's jurisdiction for the exercise of that, the mere fact that you exercise jurisdiction doesn't mean there is jurisdiction if you didn't consider the issue. Here, they didn't consider whether there had to be a relationship. They only addressed whether he was actually committing the offense while the restraint took place and having not considered the relationship requirement, particularly with... Well, you know, and Johnson... And Johnson, it says that what you look at is whether if the crime of constructive possession, government must produce evidence showing ownership, dominion, or control over the contraband itself or the premises in which the contraband is concealed. So it's enough to own the apartment. So whether he was in Pasadena working or not or any of that, under Johnson, all you need to do is show ownership of the premises in which the contraband is concealed. Well, I mean, Castroline, this court has made clear, and Castroline admittedly was an odd case in that there the defendant was arrested and his guns had been seized, but the court rejected the idea that simply ownership is what gets you constructive possession of items. Do you agree with Mr. Tanaka that the relevant conduct guideline is controlling for our interpretation of prior sentence in the illegal reentry case? I do think the amendment to the guideline is probably not inconsistent with 4A1.2, even though it's not perhaps the best reading of that wording. In fact, I think it's relevant to look at not part of the conduct of the instant offense before the amendment was added, and it was added in November 1993. Most courts had applied a severability test, and really it looked like what courts had done had looked at part of the instant offense, simply looks at if it's a severable offense, then it's not. If it is, then it is part of the instant offense, and that's how you would treat it. That seemed like perhaps the best way to look at the language itself, because instant offense would refer to the 1326 offense, and then part of the conduct of the instant offense would look if it was part of that or different than that. But it is true that instant offense has a meaning in the guidelines, albeit one that comes from the commentary. It's used in other positions of criminal history that benefit the government and are used by the government, including 4A1.1 D&E. I don't think, even if that wouldn't be the best interpretation of instant offense, that it's inconsistent or plainly erroneous to say that instant offense includes relevant conduct, particularly when the commission is concerned there was to prevent double counting, which is the problem that would occur in the hypo that I gave where you had an ongoing fraud in the firearm that was possessed during the offense but was unrelated. If you allowed, if you adopt the interpretation that for criminal history it wasn't part of the offense conduct because it was kind of a several-level offense, then the defendant would get criminal history points. But then you apply the defendant's definition of relevant conduct under the offense guideline calculation because there's a firearm enhancement under 2B1.1, the defendant would also get a firearm enhancement. And so I don't think it was illogical for the sentencing commission to say, well, we want to have consistent wording between the two to prevent double counting. And recognizing that it works to the government's advantage here to have it in this particular case to say, oh, it's inconsistent, I don't really think we can say that. I do think the problem here is not the inconsistency between that wording and the application note but the breadth of the defendant's interpretation of 1B1.3. And I think it really distorts what is offense conduct and what is criminal history. And that's ultimately the problem. If you treat something, it really breaks away from the kind of real offense conduct that 1B1.3 is attempting to capture. That's the point that the Seventh Circuit made in Ritzema. When they point... Isn't there a solution for that, for them to amend that commentary? They could amend the commentary, but statutory interpretation depends on context as well. And if looking just at the wording, focusing on the during the... But it's very hard because they use the word during. They use a lot of other words during the sentence and other terms in other sections, but in this one they use the word during. How do you... How do you... Well, they also... It seems to suggest a temporal... a temporal connection only, not a causal connection. I agree the term during is temporal, but it does... during the commission of the offense, and I think commission suggests the acts of the offense and a relationship to them. I think if you look at the other two provisions of that same part, which talk about preparation of the offense and, of course, the commission of the offense and its role and conduct in avoiding detection and responsibility of the offense, both of those are tied to specific offense conduct and require a relationship to it. It's not merely in the time period before committing the offense and the time period after committing the offense. It bears relationship to the offense conduct. So I think those are before, during, and after, but in the context of a relationship between offense conduct. I think it's also important to look at, as the Seventh Circuit noted in Taylor, that we're dealing with relevant conduct and there has to be some relevancy to the offense conduct. And again, the point of this relevant conduct provision is to capture real offense conduct and not simply be the charges the government provides. And as the Seventh Circuit had noted in Ritzma, if you get away from, if you make just contemporaneous what the provision embraces, then you get away from real offense conduct. And there, they noted, the real danger is with cross-enhancements or cross-references in the guidelines where you have the potential for the defendant to get an incredibly serious sentence based upon something that bears nothing related to the offense and conviction but may be criminal history. I mean, to take the example of someone who possessed a firearm during an offense, if the person killed someone during the offense, even if it, during the time the offense was ongoing, even if it bared no relationship to the offense, there are a number of provisions that have cross-references to crimes that would be murder and require you to apply that offense level. And in that circumstance... But, the District Court could look at it and say, ah, you know, even in this case, the District Court could say, well, yes, I changed the calculations, but I still think this is a right sentence. I mean, you know, right? So, you know, all these horrible hypotheticals you come up with really get sort of ironed out after Booker, don't they? I agree that the Court could account for that, but it would diminish the guidelines to say that, to not still interpret them as you would have before Booker and to require that the provisions work in tandem with one another to rely on context and the interplay between the two. I mean, again, take the fraud example. There, if the defendant gets... And actually, I should point out that the 10th Circuit addressed a similar case to the fraud example in Wilson. There, the defendant challenged the inclusion of his firearm offense in his criminal history involving this fraud offense and the Court said that the District Court hadn't made sufficient findings there about whether it was committed... Whether the commission of the offense was relevant to the fraud offense. It simply pointed out that the fact that it was committed at the same time was not decisive. You need to have some relevancy. But what it did is say, we don't need to remand this case for those findings because the defendant would be worse off if we treat it as this offense conduct rather than criminal history. In fact, it would lead to a higher offense level. And that's ultimately the problem you have here. You have something that is clearly criminal history conduct. It clearly is not related at all to the offense conduct. And given that you always get two points for enhancement, you have minimum base offense levels in the various guidelines, you have a disproportionate impact that can occur for the same conduct that bears no relationship to the offense conduct when really, in criminal history, it would be taken less seriously and that's the appropriate place for it to occur. Thank you. I want to address just one point and that is the suggestion by the government that somehow reading the language of 1B1.3 is going to result in this  in increasing offense level conduct. He gave the example of an ongoing fraud and suggested that this would be the case that anything that happened during the time of the ongoing fraud could be attributed to the fault of the offense. And that is just not true. And that's because it's something that government counsel said they agree with. The language is anything that happens during the commission of the offense and he says that suggests the acts of the offense. Now, on a fraud offense, we're talking about fraudulent acts. In an illegal entry case, the act of the offense is the act of existing, basically, of being present. Which is why this case is sort of unique. Well, you have cases where you have conspiracy to commit mail fraud and these business schemes. They can go on for a couple of years. That's correct. And I'm not suggesting and I don't think the court needs to go so far to hold that anything that happens temporarily during, you know, point A and point B from the start of the conspiracy to the end of the conspiracy is relevant conduct. Because unless they're during the commission of the offense, that denotes two concepts. One, the temporal concept, during. And secondly, commission of the offense. So it has to be related to whatever offense is being committed. What do you mean it has to be related to the offense? Well, if we're talking about I thought we were only talking about temporal connection. Temporal connection while the offense is going on. And the offense in a 1326 case is ongoing 24 hours a day, seven days a week. A conspiracy to sell narcotics, a conspiracy to commit fraud  for several years. Well, they go to bed at night, though. They're active during that time. Doesn't the conspiracy continue? Well, the conspiracy does continue during that entire period? In one sense it does, but in the sense that the acts comprising the conspiracy don't. I guess what the United States is saying here is you better be careful what you're asking for. I understand that. That's why I'm not asking to expand the definition of relevant conduct beyond any recognition, but it does, it is canon by the particular offense at issue in this case and that's 1326. This offense continues 24 hours a day, but a conspiracy only occurs while you're actually plotting? Something that's offense conduct. When you go to sleep it stops existing? It stops. The conspiracy offense stops. A conspiracy might not, but the offense conduct does. Here the offense conduct never stops and that's the difference. In a conspiracy you only conspire at certain times and when you're eating dinner probably you're not conspiring unless your co-conspirator is there and you're not doing anything that's going to further the conspiracy. In an illegal reentry case you're committing an offense every second that you're in this country and that's the difference. You're representing an individual client and it may be best for him in this case, but I don't think you're going to have a lot of success with the argument that a conspiracy is occurring at 3 o'clock in the afternoon when somebody's making a sale and then it's off between 3 and 5 when they're just sitting around playing poker. I think only in the context of the 1B1.3 the relevant conduct. When we juxtapose the words during the commission of then that's when the rest of the... You have a Ponzi scheme so you've constantly got letters going you've got e-mails you've got telephone calls you could go on for years people are sending you money any way in which that doesn't come to me for years. The distinction I'm trying to make your  one between just a plain temporal connection which would encompass that certainly. You've got this mail fraud scheme going you've got your boiler room and you're committing this huge mail fraud operation in the meantime you say well you know I'm sort of operation is going well I think I'm going to go rob a bank today or I'll also go and engage in some drug transactions. Certainly so long as you have the drugs you've got both things going on right? They're both going on for a long time and the fraud could be the mail fraud could be going on for a long time. That's correct but the fraudulent acts and any illegal acts that comprise that conspiracy are not going on during that entire period of time. That entire period of time encompasses the offense. But you'll find out what happens   of time. But what about being a felon in possession? I mean isn't that something that goes on for years? Possessory offenses are much closer and I'm not sure where the line is drawn on that one. If I start to think about it I bet I can come up with another dozen or two offenses that go on for years and years. I guess you can't help it if it's a bad rule for your clients in general but it's a good rule for this one. That's correct John and I suggest the limitation is a natural one that the difference between this case will be submitted. The court will stand in recess for the day.
judges: Reinhardt, Kozinski, Ikuta